# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-00599-SCT

*NICHOLAS JOHNSON a/k/a NICHOLAS EARL JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/2016 |
| TRIAL JUDGE: | HON. SMITH MURPHEY |
| TRIAL COURT ATTORNEYS: | JAMES STEPHEN HALE, JR. |
| | DAVID L. WALKER |
| | JOHN W. CHAMPION |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GRETA REGINA BALLARD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/14/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., COLEMAN AND BEAM, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Nicholas Johnson appeals his convictions of burglary and attempted armed robbery, claiming the State presented insufficient evidence to identify him as the perpetrator and that the jury found he was the perpetrator contrary to the overwhelming weight of the evidence. Because three witnesses identified Johnson with absolute certainty, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Around 1:30 a.m. on May 29, 2015, 72-year-old Betty Kate Lee was in her home on Hoskins Road in Batesville when she heard someone enter her house. Soon after she heard the noise, a man stood in front of her holding a knife. The man grabbed her pajama shirt and told her to turn over. She responded stating "You can't rape me. I'm on my period." The man then demanded money, and Lee offered four dollars she had in her drawer. He demanded more, but she told him it was all she had. Then, when Lee told the perpetrator that her grandson, Vernon, would kill him, the man fled the home apologizing and threatening to come back if Lee called the police.

¶3.     Joel Johnson was visiting a different home on Hoskins Road that day. Between 1:30 and 2:00 a.m., Johnson was getting in his truck to leave when he saw a man walk out from behind Linda Dandridge's home, which sits immediately in front of Lee's home. Joel observed the man walk up the steps to Dandridge's front porch, but when the man saw Joel watching, he turned and left. Joel called out "Nick" to the man, and the man fled toward Nicholas Johnson's home further down the street.

¶4.     Later, Tarance Winfield—Linda Dandridge's son—was standing outside his mother's home after police had responded. Nicholas Johnson came to Tarance and asked what was going on. Tarance responded that someone had been breaking into houses, and that his mother's security camera caught the man on tape. Nicholas was shocked when he heard about the camera and returned to his house.

¶5.     On July 8, 2015, a grand jury indicted Nicholas Johnson on two counts of burglary, one count of attempted rape, and one count of attempted armed robbery. At trial, most of the testimony centered on the intruder's identity.

¶6.     Lee never saw the man's face because it was covered with a bandana. But at trial, she described the intruder's appearance—a tall and skinny man wearing a blue bandana, blue clothes, black leather shoes, and a cap—and she identified the man in three surveillance photographs as the intruder.

¶7.     Joel testified that he recognized the man he had seen at Dandridge's home, that the man was Nicholas Johnson, and that he was the defendant. When asked how sure he was Nicholas Johnson was the man he had seen, Joel testified that he was "so positive" and had no doubt. And when asked about "anything distinguishing about Nick that you know him when you see him, Joel responded it is "[t]hat little pimp walk he be having walking." Joel did admit he could not see the man's face because he had a bandana covering it, and on cross-examination, Joel testified that he had identified Nicholas by his walk.

¶8.     Linda Dandridge's home had a surveillance camera on the porch. Tarance watched the video from that night and "instantly" identified the man on the porch as Nicholas Johnson. Tarance agreed Nicholas had a distinctive walk. Tarance later took still photographs from the video, which he provided to police. Those were the photographs in which Lee identified the intruder. And Torri Lee-Jones, Lee's granddaughter, also identified Nicholas in the photographs, saying she instantly knew it was him. She testified she was one hundred percent sure it was Nicholas and agreed he has a distinctive walk.

¶9.     At the close of the State's case, Johnson moved for a directed verdict, arguing the State put forth insufficient evidence to prove he was the perpetrator.  The circuit judge denied the motion, and the jury then found Johnson guilty of burglary and attempted armed robbery, but not guilty of attempted rape.[1]

¶10.     Johnson moved for a new trial or judgment notwithstanding the verdict arguing the verdict was against the overwhelming weight of the evidence and the circuit judge erred by denying proposed jury instruction D-1, a peremptory instruction for the defendant.  The circuit judge denied that motion as well and sentenced Johnson to twenty-five years for burglary—twenty to serve, five post-release supervision—and twenty-five years for attempted armed robbery—twenty to serve, and five post-release supervision—the sentences to run concurrently.  Johnson filed this appeal.

**ANALYSIS**

¶11.     Johnson challenges the weight and sufficiency of the State's evidence.[2]  Both Johnson's arguments attack the State's proof that he was the perpetrator.  When reviewing the sufficiency of the State's evidence, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[3]  And considering the

---

[1] For some reason unexplained in the record, the second burglary count was not submitted to the jury.

[2] As with his post-trial motion, Johnson frames his sufficiency-of-the-evidence issue as the circuit judge's error in denying his proposed peremptory instruction.

[3] *Brooks v. State*, 203 So. 3d 1134, 1137 (Miss. 2016) (quoting *Warren v. State*, 187 So. 3d 616, 627 (Miss. 2016)).

weight of the evidence, this Court views "the evidence 'in the light most favorable to the verdict'" and "'will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'"[4]

¶12.  Lee—the victim—testified the man in the surveillance photographs from Dandridge's home was the intruder in her home.  Joel testified that he saw Nicholas Johnson walk from behind Dandridge's home and up onto Dandridge's porch around the time of the burglary.  Dandridge's home sits immediately in front of Lee's home.  Likewise, Tarance watched the video from Dandridge's porch and "instantly" identified Nicholas Johnson.  The same was true for Torri Lee-Jones when she reviewed the still photographs from that video.  Joel, Tarance, and Torri all expressed absolute certainty the man was Nicholas Johnson.

¶13.  Given the eyewitness identification by Joel and two identifications from the video by Tarance and Torri, all expressed with absolute certainty, we find that a rational trier of fact could find that Nicholas Johnson was the perpetrator beyond a reasonable doubt, and that the jury's conclusion that he was is not against the overwhelming weight of the evidence.

¶14.  We note that Johnson spends much of his brief arguing this testimony should be disregarded because the witnesses were not credible.  But this Court has held that "the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony."[5]

**CONCLUSION**

---

[4] *Martin v. State*, 214 So. 3d 217, 222 (Miss. 2017) (quoting *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005)).

[5] *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980).

¶15. We affirm Johnson's convictions and sentences for burglary and attempted armed robbery.

¶16. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**